IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Gordon P. Gallagher, United States Magistrate Judge

Civil Action No. 17-cv-452-CMA-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

$114,700.00 IN UNITED STATES CURRENCY,

    Defendant.

## RECOMMENDATION REGARDING CLAIMANT'S MOTION TO DISMISS

    This matter comes before the Court on Claimant's motion to dismiss (ECF #23)[1] (which was referred to this Magistrate Judge (ECF #24))[2], the United States' response (ECF # 31), and Claimant's reply (ECF #38). Further, Claimant raises the same issue by way of an affirmative defense (ECF #15, p. 8, 12th affirmative defense) and this Court originally chose not to issue a

---

[1] "(ECF #23)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Recommendation.

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

recommendation as to the issue in that context (ECF #40, p. 4), preferring to address the matter here where it is more fully briefed.[3] The Court has carefully reviewed each of the aforementioned documents and any attachments. The Court has also considered the entire case file, the applicable law, and is sufficiently advised in the premises. Oral argument was not requested and is not necessary to resolve this issue. For the following reasons, I respectfully recommend that Claimant's motion be DENIED.

The United States seeks to forfeit Defendant $114,700.00 in United States currency based on an alleged violation of 21 U.S.C. § 801 *et. seq.* (ECF #1, p. 1). Claimant moves to dismiss pursuant to Fed.R.Civ.P. 12 "on the basis that the forfeiture statute invoked by [the United States] violates his Due Process rights." ECF #23, p. 1. Specifically, Claimant urges the Court to find 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 983(c)(1) unconstitutional. Claimant's theory is that Justice Thomas, in *Leonard v. Texas*, 137 S.Ct. 847 (2017), "in effect succinctly outlined why" the aforementioned statutes are unconstitutional (ECF #23, p. 2) (Justice Thomas, concurring in the denial of *certiorari* due to failure to raise the issue in the Texas Court of Appeals, in a matter proceeding under the Texas Code, which does not afford a jury trial, and essentially urging "consideration [of the topic] in greater detail." *Leonard*, 137 S.Ct. at 850). Claimant goes on to argue that the forfeiture of proceeds of a crime "punishes for that crime, so it should require the government to prove its case beyond a reasonable doubt to comply with the Constitution." ECF #23, p. 3. Claimant moves the Court to "strike" the offending statutes due to the preponderance standard therein. *Id*. at 5. Claimant's twelfth affirmative defense (ECF #15, pp. 8-9) and, to some slight extent, Claimant's reply, *see* ECF #38, pp. 23-24, seek the imposition of a higher burden (Claimant's affirmative defense (4/24/17) urges a

---

[3] The Court will separately issue a Recommendation as to the motion to strike the 12th affirmative defense. *See also* Order adopting and affirming recommendation (ECF #44, p. 2) reserving ruling with regard to defense 12.

"clear and convincing" standard while Claimant's reply (9/18/17) states that a "blanket standard is inappropriate" and requests a beyond a reasonable doubt standard if the statutes are not struck).

In relevant part, 21 U.S.C. § 881(a)(6) allows for the forfeiture of monies related to drug crimes as defined by the subsection. The general method of proceeding and burden of proof are set forth at 18 U.S.C. § 983. In 2003, Congress enacted the Civil Asset Forfeiture Reform Act (CAFRA) Pub.L. No. 106–185, 114 Stat. 202 (2000) (codified principally at 18 U.S.C. § 983) (reforms include representation (in some circumstances)), § 983(b); codifying the burden of proof at a preponderance standard (rather than the former probable cause standard),[4] § 983(c); and adding an innocent owner defense, § 983(d)). Additionally, a claimant has a jury trial right upon demand. *See* Rule G(9), Forfeiture Actions in Rem and Fed.R.Civ.P. 38.

Claimant, who demanded a jury trial in the instant action (ECF #15), challenges the burden of proof arguing that the forfeiture is "punish[ment] for [] crime" thus requiring proof beyond a reasonable doubt in order to comply with the United States Constitution. ECF #23, p. 5. The issue is whether the existing forfeiture rules and regulations, which include a preponderance standard, when looked at as a whole, provide the "fairness and reliability" necessary to comport with due process. *See Matthews v. Eldridge*, 424 U.S. 319, 343 (1976).

---

[4] Substantial debate occurred in Congress regarding the appropriate burden of proof. *See, e.g.,* Review of Federal Asset Forfeiture Program, Hearing before the Legislation and National Security Subcommittee of the Committee on Government Operations, U.S. House of Representatives, 103rd Congress, pp. 44, 69, 92, 172 (6/22/1993); *see also* Civil Asset Forfeiture Reform Act, Hearing before the Committee on the Judiciary, U.S. House of Representatives, 104th Congress, pp. 6, 24, 59 (7/22/1996); *see also* Civil Asset Forfeiture Reform Act of 2000, 146 Cong Rec H 2040, pp. 27-28. While the issue (the appropriate burden of proof in the context of an alleged due process violation) is certainly subject to judicial review, appropriate deference is due to Congress. *See generally, Cook v. Rumsfeld*, 429 F.Supp. 2d 385 (D.Mass. 2006).

Crime and Punishment

Claimant argues that the sought forfeiture essentially acts as a punishment. *See* Claimant's motion (ECF #23, p. 2). Case law has long recognized that "*in rem* civil forfeiture is a remedial civil sanction, distinct from potentially punitive *in personam* civil penalties such as fines, and does not constitute a punishment for double jeopardy purposes." *U.S. v. Ursery*, 518 U.S. 267, 268 (1996) (citation removed). The Supreme Court, applying the two-part *89 Firearms* test, definitively proclaimed that Congress intended the civil forfeiture statutes in question (or their CAFRA descendants) to be civil in nature. *See United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 362-62 (1984). "There is little doubt that Congress intended these forfeitures to be civil proceedings." *U.S. v. Gilcrease Lane, Quincy, Fla.*, 656 F. Supp. 2d 87, 89 (D.C. 2009) (quoting from *Usery*, 518 U.S. at 268). This is crucial, as the Supreme Court has clearly determined that beyond a reasonable doubt is a standard reserved for criminal cases. *Addington v. Texas*, 441 U.S. 418, 428 (1979). "To the extent that § 881(a)(6) applies to "proceeds" of illegal drug activity, it serves the additional nonpunitive goal of ensuring that persons do not profit from their illegal acts." *Usery*, 518 U.S. at 291; *see also Austin v. United States*, 113 S.Ct. 2801, 2812 (1993) (which is inapposite to the current matter because, in determining that the forfeiture was penal, it was not addressing the forfeiture of property under 881(a)(6) which was acquired by illegal conduct).

*Leonard v. Texas*

Claimant, in support of his argument that there exists a due process violation, relies heavily upon Justice Thomas' pronouncements in the *Leonard* matter. While in no way discounting the Justice's writing, I must keep context firmly in mind. As noted *supra*, Justice Thomas was

commenting on Texas' forfeiture statute as opposed to CAFRA, which differ in terms of their afforded rights and procedures. And while Justice Thomas' comments can also be read as a more general questioning, perhaps even condemnation "of the broad modern forfeiture practice[s] . . ." *Leonard*, 137 S.Ct. at 850, they are neither a holding or dicta. Thus, I must look to those cases which have relevant holdings when appraising the fairness of CAFRA. While civil forfeitures have a long history in this country, *see* e.g., Act of March 2, 1807, ch. 22 §§ 4, 6, 2 Stat. 426; Act of Mar. 22, 1794, ch. 11, § 1, 1 Stat. 347; and Act of Aug. 4, 1790, long usage or historical precedence does not act as a shield from a due process challenge. *See Pacific Mutual Life Ins. v. Haslip*, 111 S.Ct. 1032, 1054-55 (1991).

The *Matthews* Test

In *Matthews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court set forth the following three factors to analyze in determining whether a particular standard of proof satisfies due process: 1) the governmental interest served by the procedure; 2) the individual interest affected by the official action; and 3) the risk of erroneous deprivation and the probable value of additional safeguards. *See Santosky v. Kramer*, 455 U.S. 745, 758 (1982) (applying the *Matthews* test in the context of termination of parental rights). This is in keeping with the need to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions due a particular type of adjudication." *Addington,* 441 U.S. at 423.

1. The Governmental Interest

As properly noted in the Government's response (ECF #31, p. 3) "the government has a legitimate interest in removing the profits obtained through crime." *See United States v. All Assets and Equip. of W. Side Building Corp.*, 58 F.3d 1187 (7th Cir. 1995). Common sense dictates that, in a business where human life and freedom seemingly have little worth to the higher-ups, perhaps stripping away some of the profits associated with the noxious and deadly trade will have a chilling effect. "Forfeiture of property prevents illegal uses ... by imposing an economic penalty, thereby rendering illegal behavior unprofitable." *89 Firearms,* 465 U.S. at 364. The Government has a significant interest in deterring the drug trade by forfeiting illegal proceeds, in making such behavior unprofitable, dismantling criminal organizations, and hopefully deterring others who may see that criminal conduct is not always lucrative.

Admiralty law was an early area of use for *in rem* civil forfeiture in the United States. *See The Palmyra*, 25 U.S. 3 (1827) (Justice Story affirmed the forfeiture of the Spanish pirate ship). Pirates were notoriously difficult to prosecute as they were often far outside the Court's jurisdiction, yet the loss of property, the ship, had obvious detrimental effects on the pirates' ability to ply their deadly trade. When piracy morphed into bootlegging as the crime *de jour*, forfeiture of property used to facilitate that trade became liable for *in rem* forfeiture. *See U.S. v. Two Bay Mules*, 36 F. 84, 85 (W.D. N.C. 1888) (however, the forfeiture regime of the time did not have the innocent owner defense enshrined in CAFRA as the court determined that the innocent owner could either try and recoup from the malfeasor or seek government remittance). While not the only modern use of *in rem* forfeiture, the war on drugs has been a significant driver of forfeitures, ultimately taking shape legislatively in CAFRA. Similar to pirates, modern drug dealers operate the world over and are likely

every bit as difficult to nab personally, thus justifying the chilling effect that *in rem* forfeiture of proceeds, instrumentalities, etc. has on their far-flung operations.

    2. The Individual Interest

The rights of individuals to hold and maintain their property free of government interference is a firmly established Constitutional right and due process is clearly required before an individual may be divested of property. *See United States v. James Good Real Prop.*, 114 S.Ct. 492, 501 (1993). However, it is axiomatic that individuals have no right to proceeds derived from drug trafficking nor to property used to assist drug trafficking. The process and procedures set forth in 21 U.S.C. § 881 and 18 U.S.C. § 983 allow courts, and juries where applicable and requested, to determine the legitimacy of a claimed property interest.

Claimant misguidedly argues, *see* Claimant's motion to dismiss (ECF #23, p. 4), that modern forfeiture of drug proceeds has more of a detrimental effect than the loss to a pirate of his ship. This argument is fallacious in multiple respects. First, be it drug proceeds or pirate booty, the Government believes it is intending to forfeit criminal proceeds. Second, in terms of relative value, perhaps even penal effect, one cannot say that the pirate ship, the mules, or the money are more or less valuable to their respective owners. Each is crucial to the livelihood of its respective owner, and *in rem* forfeiture of any or all of them must comport with due process.

    3. The Risk of Erroneous Deprivation and the Probable Value of Additional Safeguards

"[T]he minimum standard of proof tolerated by the due process requirement reflects not only

the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." *Santosky*, 455 U.S. at 755.

> "Generally speaking, the evolution of this area of the law has produced across a continuum three standards or levels of proof for different types of cases. At one end of the spectrum is the typical civil case involving a monetary dispute between private parties. Since society has a minimal concern with the outcome of such private suits, plaintiff's burden of proof is a mere preponderance of the evidence. The litigants thus share the risk of error in roughly equal fashion. In a criminal case, on the other hand, the interests of the defendant are of such magnitude that historically and without any explicit constitutional requirement they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment.

*Addington*, 441 U.S. at 423 (with the middle ground being the clear and convincing standard). I keep in mind the traditional uses of the various standards as well: beyond a reasonable doubt being reserved for criminal matters, *Addington,* 441 U.S. at 428; clear and convincing for uses such as termination of parental rights, *Santosky*, 455 U.S. at 769, deportation, *Woodby v. I.N.S.*, 385 U.S. 276 (1966), and denaturalization, *Schneiderman v. United States*, 320 U.S. 118 (1943); with the preponderance standard reserved for "mere loss of money." *Santosky*, 445 U.S. at 756 (internal quotations and citation removed).

   a. <u>nature of the relevant inquiry (proving the funds are proceeds derived from drug-trafficking)</u>

  The lack of records likely to exist as to funds illegally derived from drug trafficking is self-evident. Drug dealing, at least at the street level, is a cash business bereft of significant record keeping. The clear goal of drug dealers is to turn their product into money and then frequently to find a way of getting that money into the legitimate stream of commerce so that it becomes useful as other than just a stock-pile of cash.

On the other hand, most of us have some records to justify the money we possess, e.g., a pay stub, a receipt, documents showing an inheritance, or sale of a car. This paperwork would be most appropriately and likely in the hands of a potential claimant. Maybe not every dollar can be accounted for, but it seems probable that a significant amount of money, lawfully garnered, can be justified by some documentation given time for production.

In the hide and seek world of drug proceeds, it would be hard for the Government to prove beyond a reasonable doubt or even by a clear and convincing standard, the origin of particular funds. Much of the proof is likely to be circumstantial. In such a situation, it is not unreasonable nor a due process violation to apportion the risk of an erroneous finding at the preponderance level.

### b. adequacy of existing safeguards

The existing safeguards include not only the standard of proof. I find it proper to "examine all procedural protections offered by the [s]tate, and [to] assess the cumulative effect of such safeguards." *Santosky*, 455 U.S. at 775 (Justice Rehnquist dissenting and joined by the Chief Justice, Justice White and Justice O'Connor) (emphasis removed). Those safeguards under CAFRA include the right to a jury trial, shorter timeframes for filing of the civil forfeiture action, the shift in burden to the government, an innocent owner defense, payment of attorney fees and litigation costs, a right to counsel in some circumstances, and hardship return during the pendency of the forfeiture action. 18 U.S.C. § 983. I find that the cumulative safeguards are adequate to protect Claimant's due process rights.

### c. value of a heightened standard of proof

Society derives a significant benefit from removing drug proceeds and forfeiting ill-gotten gains. Undoubtedly, raising the burden of proof to a clear and convincing standard or to beyond a

reasonable doubt would result in fewer successful forfeiture proceedings by the Government. But at what cost? In a system with a fairly level playing field, tipped slightly but ever so slightly towards the claimant, the fact that the Government often has to proceed by circumstantial evidence can be counterpoised by a claimant's ability to provide documentary proof. Raising the standard of proof seems likely to prevent legitimate forfeitures while not preventing a substantial number of unwarranted attempts to forfeit. The Court does not find a significant benefit would derive to society by heightening the standard of proof.

Congress has clearly spoken and set the burden of proof in civil forfeitures of this ilk at a preponderance standard. When combined with the significant protections provided under CAFRA, I am not prepared to say that Claimant is deprived of his due process rights with the standard of proof in this action being "proof by a preponderance of the evidence" and that such a standard is unconstitutional. For the foregoing reasons, I respectfully recommend that Defendant's motion to dismiss be DENIED.

Dated at Grand Junction, Colorado, this December 8, 2017.

_____

Gordon P. Gallagher
United States Magistrate Judge