IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-00452-CMA-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

$114,700.00 IN UNITED STATES CURRENCY,

    Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART
CLAIMANT'S MOTION FOR ATTORNEY FEES**

This matter is before the Court on Claimant Richard Schwabe's Motion for Attorney Fees.[1] (Doc. # 134.) The Government filed a Response (Doc. # 156) on February 28, 2020, and Claimant filed a Reply on March 30, 2020 (Doc. # 160). For the following reasons, the Court grants Claimant's Motion in part and denies it in part.

## I.     BACKGROUND

This civil forfeiture case arises from the Government's seizure of the defendant currency during a search of Claimant's property, which was conducted pursuant to a

---

[1] Claimant's request to recover litigation-related costs will be resolved by the Clerk of the Court. Additionally, the Court considers the expenses titled, "Items Normally Itemized And Billed To Client In Addition To Hourly Rate," to be costs rather than attorney fees. Those items include expenses such as Mr. Burch's hotel bills and meals. (Doc. # 160-4 at 1–3.) Because the Court considers the items to be costs, the Court will not address them in this Order.

valid search warrant. The Government initiated the case on February 17, 2017, by filing a Verified Complaint for Forfeiture *In Rem*. (Doc. # 1.) On April 1, 2017, Edward Burch entered his appearance on behalf of Claimant, and he filed a Verified Claim Opposing Forfeiture. (Doc. ## 10, 12.) Mr. Burch claims to be a specialist in civil forfeiture law, and he charges $600 per hour for his services. *See* (Doc. # 134-6).

Beginning with Claimant's Answer (Doc. # 15), which raised 14 affirmative defenses that were as varied in subject matter as they were in legitimacy, Mr. Burch vigorously, albeit fumblingly, advocated for his client. Among other things, Mr. Burch filed: a Motion to Dismiss, which questioned the constitutionality of the federal forfeiture statute (Doc. # 23); a Motion to Quash various subpoenas (Doc. # 53); a Motion to Suppress, which challenged the validity of the underlying search warrant at issue (Doc # 65); a Motion for Summary Judgment (Doc. # 90); and a Motion in Limine (Doc. # 115). All of those motions were denied, and some—e.g., the Motion to Quash—were very poorly supported. *See* (Doc. # 57) (denying Motion to Quash and noting it was "wholly unsupported by fact or law.").

The Court conducted a three-day jury trial from December 2–4, 2019. Like the motions he filed, Mr. Burch's performance at trial was inelegant and, at times, inappropriate. Mr. Burch displayed a lack of familiarity with basic concepts of the Federal Rules of Evidence such as proper impeachment. Additionally, he seemed to intentionally step over the line between permissible and impermissible conduct by attempting to introduce evidence that had not been disclosed to the adverse party and

employing strategies during his closing argument that bordered on deliberate jury nullification.

However, despite Mr. Burch's performance, the jury returned a verdict that was favorable to his client. Specifically, the jury determined that, of the $114,700 at issue, $21,000 was subject to forfeiture as proceeds of drug trafficking. (Doc. # 131.) Accordingly, the Clerk of the Court entered final judgment and noted that because "Claimant has substantially prevailed in this matter, the provisions of 28 U.S.C. § 2465(b) shall apply regarding fees, costs and post-judgment interest under applicable statutes, federal and local rules." (Doc. # 133 at 2.)

Mr. Burch filed the instant Motion on December 20, 2019. In his Final Tally of Requested Fees and Costs, he requests **$520,762.50** in attorney fees for himself and four other lawyers. (Doc. # 160-4 at 1.)

## II.    LEGAL STANDARD

When a claimant "substantially prevails" against the United States in a civil forfeiture proceeding, "the United States shall be liable for . . . reasonable attorney fees and other litigation costs reasonably incurred by the claimant . . . ." 28 U.S.C. § 2465(b)(1)(A). However, "if the court enters judgment in part for the claimant and in part for the Government, the court shall reduce the award of costs and attorney fees accordingly." § 2465(b)(2)(D).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1176 (10th Cir.

2010) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (citing *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) ("[A] court must begin by calculating the so-called 'lodestar amount' of a fee, . . . [which] is the product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'")). However, the Tenth Circuit has explained:

> In a case like this, where Plaintiff "**achieved only partial or limited success**," the calculation for reasonable attorney's fees requires more than just determining "the product of hours reasonably expended on the litigation *as a whole* times a reasonable hourly rate" because such "*may be* an excessive amount." [*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)] (emphasis added). Two questions must be addressed by the district court. "**First**, did the plaintiff fail to prevail on claims that were unrelated to the claim[ ] on which he succeeded? **Second**, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id*. at 434 . . . . Plaintiff can only obtain an award of attorney's fees for time spent prosecuting the successful claim as well as those related to it.
>
> However, that does not end the matter. The district court still retains discretion to adjust the award commensurate with the degree of success obtained. *Id*. at 436 . . . . This last inquiry is not amenable to a formulaic table but is a matter of discretion. *Id*. In exercising this discretion, however, we note that "[t]he record ought to assure us that the district court did not 'eyeball' the fee request and cut it down by an arbitrary percentage . . . ." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir.1998) (quoting *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No.* 205, 90 F.3d 1307, 1314 (7th Cir.1996)).

*Browder v. City of Moab*, 427 F.3d 717, 722–23 (10th Cir. 2005) (emphasis added).

### III.   DISCUSSION

Applying these principles to the instant case, the Court will begin by calculating the applicable "lodestar" amount before considering the impact of the partiality of Claimant's success.

### A. LODESTAR AMOUNT

#### 1. Number of Hours Reasonably Expended

In determining the reasonableness of the hours expended, a court considers several factors, including: (1) whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering; (2) whether the amount of time spent is reasonable in relation to counsel's experience; and (3) whether the billing entries are sufficiently detailed, showing how much time was allotted to specific task. *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 538, 542 (10th Cir. 2000) (citing *Ramos v. Lamm*, 713 F.2d 546, 553-54 (10th Cir. 1983)). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433; *Roth v. Coleman*, 438 F. App'x 725, 727 (10th Cir. 2011).

The Tenth Circuit has noted that "[c]ounsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified School Dist. No. 233, Johnson County, KS*, 157 F.3d 1243, 1250 (10th Cir. 1998). Once the court has adequate time records before it, "it must then ensure that the winning attorney has exercised 'billing judgment.'" *Case*, 157 F.3d at 1250 (quoting *Ramos*, 713 F.2d at 553). "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Id*. Additionally, "the district court must reduce the actual number of hours expended to a reasonable number to ensure

services an attorney would not properly bill to his or her client are not billed to the adverse party." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000) (citation omitted).

Mr. Burch asserts that his co-counsel and he collectively spent **862.6** hours litigating this case. *See* (Doc. # 160-4 at 1). However, upon review of Mr. Burch's Final Tally of Requested Fees and Costs, and the documentation that supports that tally, it is evident that Mr. Burch—and the other attorneys who assisted him throughout this case—did not exercise sound billing judgment. Accordingly the Court "must reduce the actual number of hours expended to a reasonable number . . . ." *United Phosphorus*, 205 F.3d at 1234.

> a. *Time spent pursuing frivolous legal theories*

Throughout this case, Mr. Burch's litigation stratagem can be accurately described as, "plead first analyze later." Not only is this litigation tactic questionable at best, it is not compensable in this Court.

For example, in the Answer that Mr. Burch filed on April 24, 2017 (Doc. # 15), he raised fourteen affirmative defenses. The Government subsequently filed a Motion to Strike that correctly asserted that many of those defenses were "incorrect as a matter of law and should be stricken." (Doc. # 16 at 3.) Mr. Burch conceded the point in his Response, and he abandoned six affirmative defenses outright, which shows that the pleading was not well-planned from the outset. (Doc. # 21 at 7.) The Court ultimately struck those defenses in addition to two others—one of which was stricken only in part. (Doc. # 44 at 2.) Because more than half of the affirmative defenses in the Answer were

6

not legally supported, the Court reduces the time Mr. Burch's billed with respect to composing the Answer and Response to the Government's Motion to Strike by 50%.

Therefore, although Mr. Burch's time sheet reflects that he spent approximately 10 hours on work related to the Answer and Response to the Motion to Strike, *see* (Doc. # 134-6 at 10), only 5 hours are compensable. Mr. Burch's colleague, David Michael, claims to have spent approximately 3 hours reviewing and editing Mr. Burch's above-referenced work product. (Doc. 134-7 at 11.) However, that time is excluded in its entirety because Mr. Michael's review apparently missed the glaring problems that existed in Mr. Burch's work.

Similarly, Magistrate Judge Gallagher noted that the Motion to Quash that Mr. Burch filed on February 8, 2018 (Doc. # 53), was "wholly unsupported by fact or law" (Doc. # 57 at 3). Mr. Burch claims to have spent approximately 20 hours on work related to that motion, *see* (Doc. # 134-6 at 13–15), and Mr. Michael spent approximately 2.5 hours reviewing Mr. Burch's work (Doc. # 136-7 at 12). All the time spent on the Motion to Quash is excluded because the motion was groundless.

In summary, the Court excludes **25 hours** from Mr. Burch's reported time and **5.5 hours** from Mr. Michael's because that time was spent on frivolous legal work.

    b.  *Excessive time on particular tasks*

Mr. Burch filed two motions that were the product of excessive time. First, Mr. Burch filed a Motion to Dismiss that challenged the constitutionality of the federal forfeiture statute. (Doc. # 23.) The motion was based almost entirely on a Statement of Justice Thomas respecting the denial of certiorari in *Leonard v. Texas*, 137 S. Ct. 847

7

(2017). Although the motion had some legal foundation to support it, that foundation was thin to say the least. Therefore, the theory did not warrant a significant amount of time to explore. The issue could be easily preserved for appellate purposes by a concise motion that would take little time to draft.

However, Mr. Burch spent approximately 30 hours on work related to the motion, *see* (Doc. # 134-6 at 11–14), and Mr. Michael spent 2 hours reviewing Mr. Burch's work (Doc. # 134-7 at 11–12). That time is excessive because the scope of the motion, and the authority on which it was based, was extremely limited. Therefore, the Court reduces each attorney's time by 50%. As a result, **15 hours** are excluded from Mr. Burch and **1 hour** is excluded from Mr. Michael.

The second motion that involved excessive amounts of time was the Motion to Suppress that Mr. Burch filed on April 3, 2018.[2] (Doc. # 65.) The motion pertained to a straightforward fact pattern regarding law enforcement's search of Claimant's property. Despite the relative simplicity of the facts and underlying Fourth Amendment legal principles, Mr. Burch's time sheet reflects that he spent nearly 110 hours on the motion

---

[2] The Government argues that time related to the Suppression Motion should be rejected in its entirety because the motion was "an affirmative claim and does not relate to the Claimant's defense of the government's case-in-chief." (Doc. # 156 at 5.) In support of its argument, the Government cites a decision from criminal case that denied a defendant access to discovery and categorized a motion to suppress as a "sword." (*Id.*) (citing *United States v. Hunt*, No. 2:11-CR-441-KJM, 2013 WL 5279075, at *1 (E.D. Cal. Sept. 18, 2013)). However, in *Hunt*, the court was analyzing whether information was **material to** the Government's case, whereas the operative standard for recovering attorney fees considers whether a matter is **related to** a claim on which a party prevailed. *See Browder*, 427 F.3d at 722–23. The former is certainly a more demanding standard than the latter. In the instant case, Claimant's Motion to Suppress did relate to the Government's forfeiture allegation because, if Claimant had prevailed, the motion would have had an impact on what evidence the Government was able to present at trial in support of its claim.

and related hearing. (Doc. # 156-4.) Additionally, Mr. Michael spent approximately 7 hours on work related to the motion (Doc. # 134-7 at 12), and Mr. Burch's colleague, Carolyn Emison billed 45 hours for time she spent working on the motion (Doc. # 134-9 at 3–4).

Based on the Court's review of the time sheets, it appears that Ms. Emison was primarily responsible for research and writing with respect to the motion. However, a substantial amount of her time overlaps with tasks for which Mr. Burch is seeking compensation. In order to mitigate the apparent overstaffing and duplication of efforts, the Court reduces Ms. Emison's compensable time by **10 hours** and subtracts Ms. Emison's time from Mr. Burch's reported time, thus reducing it by **30 hours**. The Court subtracts an additional **15 hours** from Mr. Burch's time to bring it within the range of what would be necessary to draft and argue a motion to suppress that is similarly challenging. Finally, the Court excludes Mr. Michael's time in its entirety—i.e., **7 hours**—because it was simply not necessary to involve a third lawyer on the Motion to Suppress, especially when the motion could have been handled by only one lawyer.

In summary, due to the excessiveness reflected in their time sheets with respect to the Motion to Dismiss and Motion to Suppress, the Court reduces Mr. Burch's time by **60 hours**, Mr. Michael's time by **8 hours**, and Ms. Emison's time by **10 hours**.

    c.  *Grossly excessive time spent seeking attorney fees*

"An award of reasonable attorney's fees **may** include compensation for work performed in preparing and presenting the fee application." *Garrett v. Principal Life Ins. Co.*, 557 F. App'x 734, 738 (10th Cir. 2014) (emphasis added) (quoting *Case*, 157 F.3d

at 1254). However, the Tenth Circuit has suggested that if an "attorney's fee request . . . is outrageously excessive, the court may respond by awarding no fees at all." *Case*, 157 F.3d at 1254. "The reason for acting punitively when a party asks for fees that are outrageously excessive is to deter attorneys from 'mak[ing] unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place.'" *Id.* (quoting *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980)).

Claimant's counsel spent an outrageous amount of time on their request for attorney fees in this case. Mr. Burch claims to have spent more than **120 hours**—i.e., three full 40-hour weeks—on matters related to attorney fees and costs. Additionally, although Mr. Michael did not provide a time sheet that reflects the time he spent working on this matter after December 18, 2019, it appears that he spent approximately **6 hours** working on fee-related issues. (Doc. ## 134-7, 160-4.)

The Court recognizes that the Government filed a detailed Response to the instant Motion, which prompted Claimant to file a detailed Reply. However, that does not justify spending almost 130 hours on attorney fees. A more plausible explanation for the extreme excess of time is that Mr. Burch and Mr. Michael faced the nearly impossible task of trying to justify fees that bear no reasonable relationship to the services they rendered. Therefore, as a disincentive for attempting to secure unreasonable compensation, the Court **does not award any fees** that pertain to work preparing the instant Motion.

In summary, the compensable hours for Claimant's attorneys are as follows:

| Attorney | Hours |
|---|---|
| Burch | 558.25 (763.25-205) |
| Michael | 32.5 (52-19.5) |
| Hagin Emison | 30 (40-10) |
| Zalkin | 6.25 |
| Maytin | 0[3] |

2. <u>Reasonable Hourly Rate</u>

"When determining the appropriate rate to apply to the reasonable hours, 'the district court should base its hourly rate award on what the evidence shows the market commands for . . . analogous litigation.'" *United Phosphorus*, 205 F.3d at 1234 (quoting *Case*, 157 F.3d at 1255). The party requesting the fees bears "the burden of showing that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (quoting *Ellis v. University of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998)). The focus must be on the "prevailing market rate in the relevant community." *Id.* (quoting *Ellis*, 163 F.3d at 1203). "[A] district court abuses its discretion when it ignores the parties' market evidence and sets an attorney's hourly rate using the rates it consistently grant[s]." *Id.* (quoting *Case*, 157 F.3d at 1255). "The court may not use its

---

[3] Lauren Maytlin claims to have billed 1.1 hours of time working on this case, but a review of her Declaration shows that, although she represented Mr. Schwabe in the state criminal prosecution arising from the September 2016 search and seizure underlying this case, she did little more than refer this case to Mr. Burch and send some information to his firm. (Doc. # 134-8.)

11

own knowledge to establish the appropriate rate **unless** the evidence of prevailing market rates before the court is inadequate." *Id.* (emphasis added) (quoting *Case*, 157 F.3d at 1257) (citing *Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987)).

The parties submitted conflicting evidence with regard to what constitutes a reasonable rate of compensation for this case. The Government submitted a Declaration prepared by Nancy Cohen. (Doc. # 156-10.) Ms. Cohen is a partner in the Denver office of the law firm, Lewis Brisbois Bisgaard Smith LLP and has practiced law for approximately 38 years. (*Id.* at 1.) Notably, Ms. Cohen is a member of the Colorado Supreme Court Advisory Counsel and the Colorado Supreme Court Standing Committee on the Colorado Rules of Professional Conduct. (*Id.* at 2.) She opines that a reasonable rate of compensation for Mr. Burch and Mr. Michael is $275 and $450, respectively. (*Id.* at 3.)

Claimant, on the other hand, initially took the position that Mr. Burch and Mr. Michael were entitled to be compensated at a rate of $600 and $825 per hour because they "are entitled to hourly rates higher than those of a general practitioner in the Denver area, because this case required specialized knowledge and experience **not held by any Colorado defense attorney**, and Mr. Burch and Mr. Michael live in and are based out of the San Francisco Bay area." (Doc. # 134 at 7) (emphasis added). However, Claimant wisely abandoned that unpersuasive argument in his Reply. Instead, Claimant submitted a Declaration prepared by David Lane. (Doc. # 160-1.)

Mr. Lane is a partner in the Denver firm, Killmer, Lane & Newman, LLP. Mr. Lane's practice "consists of criminal defense, primarily in death penalty defense, and

plaintiffs' civil rights and discrimination cases." (*Id.* at 5.) He opines that "the hourly rates charged by each of the civil forfeiture lawyers on this case were reasonable for lawyers of comparable skill and experience in the Colorado civil rights community." (*Id.* at 4.) Notably, Mr. Lane indicates that he personally charges a rate $650 per hour. (*Id.* at 7.) However, Mr. Lane has "tried well over 225 jury trials over 40 years," unlike Mr. Burch, who is seeking a similar rate for his services despite having substantially less experience. (*Id.* at 16.)

With that in mind, the Court finds Ms. Cohen's opinion to be more credible than Mr. Lane's. Between the two practitioners' analysis of this case, Ms. Cohen's assessment closely matches the Court's own observations. For instance, she states:

> Mr. Burch's skills at trial were not of a lawyer who had been practicing law for 12 years. Not knowing how to impeach witnesses with deposition testimony and Mr. Burch offering evidence that had been excluded is what one might expect from an inexperienced associate, but not a twelve year lawyer. Mr. Burch prevailed at trial despite his performance.

(Doc. # 156-10 at 7.) Additionally, the Court credits Ms. Cohen's intuitive assessment that, "[c]ontrary to Mr. Burch's Declaration, there are competent lawyers in Colorado who handle this type of litigation. Thus, it was not necessary to retain out of state counsel who live in a city with a higher cost of living . . . ." (*Id.* at 5.) Perhaps most importantly, Ms. Cohen accurately observed that "[t]his case was not complex. It involved one asset and one claim. The facts are straightforward." (*Id.*)

Therefore, due to the simplicity of the case, the availability of local counsel, and Mr. Burch's relatively modest skillset, charging a rate of $600 per hour is fundamentally unreasonable. On the other hand, Ms. Cohen persuasively asserts that **$275** is a

13

reasonable rate for Mr. Burch's services, and that **$250** and **$450** are reasonable rates for Ms. Emison and Mr. Michael, respectively.

In summary, the compensable hours **and rates** for Claimant's attorneys are as follows:

| Attorney | Rate | Hours | Amount of Fees |
|---|---|---|---|
| Burch | $275 | 558.25 | $153,518.75 |
| Michael | $450 | 32.5 | $14,625.00 |
| Hagin Emison | $250 | 30 | $7,500.00 |
| Zalkin | $250 | 6.25 | $1,562.50 |
|  |  | Total Fees | $177,206.25 |

**B.     PARTIAL SUCCESS**

As the Court has previously noted, 28 U.S.C. § 2465(b)(2)(D) indicates that, "[i]f the court enters judgment in part for the claimant and in part for the Government, the court shall reduce the award of costs and attorney fees accordingly." In this case, the Government prevailed as to $21,000, or approximately 18%, of the $114,700 at issue. Therefore, the plain language of § 2465(b)(2)(D) requires Claimant's attorney fee award to be reduced. As a result, the Court reduces Claimant's award by 18%, which is the proportion of the proceeds that were subject to forfeiture as proceeds of drug trafficking.

Additionally, Ms. Cohen accurately points out that Mr. Burch and Mr. Michael's time sheets are littered with block billing and "paralegal work [that] should not be charged at the lawyer hourly rates." (Doc. # 156-10 at 7); *see, e.g.*, (Doc. # 134-6 at 12) (Mr. Burch's time sheet billing for reviewing order granting motion for extension of time

and calendaring deadlines); (Doc. # 134-7 at 11) (Mr. Michael's time sheet curiously billing for retrieving and forwarding a disc from one person to another). Rather than scouring the time sheets for all the instances in which Mr. Michael and Mr. Burch bill for non-substantive legal work, the Court finds that an additional 7% reduction in their attorney fees is warranted. *See, e.g.*, *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1208 (10th Cir. 2015) ("Here, the district court's reasons for reducing Zisumbo's attorneys' fee award by 40%—Zisumbo's limited success overall and the generally haphazard manner in which his counsel litigated this case—were both appropriate and supported by the record.").

In summary, the final award of attorney fees that accounts for an **18%** reduction overall, and an additional **7%** reduction for Mr. Burch and Mr. Michael, is as follows:

| Attorney | Rate | Hours | Amount of Fees Including Applicable Reductions |
|---|---|---|---|
| Burch | $275 | 558.25 | $115,139.00 (153,518.75 reduced by 25%) |
| Michael | $450 | 32.5 | $10,968.75 ($14,625.00 reduced by 25%) |
| Hagin Emison | $250 | 30 | $6,150.00 ($7,500.00 reduced by 18%) |
| Zalkin | $250 | 6.25 | $1,281.25 ($1,562.50 reduced by 18%) |
| | | **Total Fees** | **$133,539.00** |

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS that Claimant's Motion for Attorney Fees (Doc. # 134) is GRANTED IN PART AND DENIED IN PART, as reflected in this Order. It is

FURTHER ORDERED that judgment shall enter in favor of Claimant and against the United States in the amount of **$133,539.00** in attorney fees.

DATED: August 26, 2020

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge